UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
INGE PETSCHAUER,

                        Plaintiff,

-against-

UNITED STATES OF AMERICA,

                        Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-6335 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

On November 15, 2013, Plaintiff filed this action against Jason Giovelli ("Giovelli") and the United States Postal Service ("USPS"), pursuant to the Federal Tort Claims Act ("FTCA"). (See Compl. (Dkt. 1).) Plaintiff alleges that Giovelli, while driving for USPS, negligently hit her with his truck. (Id.) On February 25, 2014, the court granted the parties' joint motion to substitute the United States of America as the sole Defendant. (See Feb. 27, 2014, Order (Dkt. 12).) On January 16, 2015, following the close of discovery, Defendant moved for summary judgment. (Not. of Mot. (Dkt. 20-1).)

On April 7, 2015, the undersigned referred Defendant's motion for summary judgment to Magistrate Judge Vera Scanlon for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Apr. 7, 2015, Order.) On January 14, 2016, Judge Scanlon recommended that the court grant Defendant's motion for summary judgment on the ground that Plaintiff had failed to raise a triable issue of fact as to whether Giovelli was negligent. (R&R (Dkt. 24) at 14.) Plaintiff subsequently filed an objection to the R&R and Defendant filed a response to the objection. (See R&R Obj. ("Pl.'s Obj.") (Dkt. 25); Def.'s Resp. to Pl.'s Obj. ("Def.'s Resp.") (Dkt. 26).) For the reasons discussed

1

below, the court ADOPTS IN FULL the R&R and, accordingly, GRANTS Defendant's motion for summary judgment.

I.  **Legal Standards**

   A.  **Standard of Review for an R&R**

In reviewing an R&R, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. To obtain de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [that party] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R].").

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002). Portions of an R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

   B.  **Summary Judgment**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

2

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). The "mere existence of a scintilla of evidence" is not enough to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [non-moving party]." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted); see Anderson, 477 U.S. at 252. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

### C. The FTCA and the New York Vehicle and Traffic Law

The court adopts Magistrate Judge Scanlon's determination of the applicable law regarding the FTCA and the New York Vehicle and Traffic Law ("NYVTL"). Accordingly, the court only briefly summarizes the applicable law below.

1. FTCA

The FTCA authorizes "claims against the United States, for money damages . . . for . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

2. Negligence and NYVTL

New York negligence law governs this action, as the FTCA dictates that the law of the state where the negligent act took place is the applicable law. See Citarella v. United States, 86 F. Supp. 3d 151, 153-54 (E.D.N.Y. 2015). To prove negligence under New York law, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care as a matter of law; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a proximate result of the breach. Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998).

However, when the allegedly injurious conduct by the defendant breaches a statute, negligence per se can apply. Negligence per se applies when the defendant's conduct violated the law and: "(1) [the defendant's negligence] causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury." Mauro v. Costco Wholesale Corp., No. 09-CV-1391 (VVP), 2013 WL 3816731, at *4 (E.D.N.Y. July 22, 2013). In such a case, a plaintiff does not need to give evidence of a duty or breach of that duty on the part of the defendant because "[v]iolation of the statute alone constitutes negligence." Id. Here, the New York Vehicle and Traffic Law ("NYVTL") "establishes rules of conduct that must be obeyed by

4

motorists and pedestrians, and a violation of the [NYVTL] constitutes negligence per se." Lee v. Charles, 986 F. Supp. 2d 277, 279 (S.D.N.Y. 2013).

The NYVTL states that drivers have a statutory duty to exercise due care to avoid colliding with pedestrians on the road, but the statute does not impose a duty on drivers to avoid accidents at any cost. See NYVTL § 1146; see also Perez v. United States, No. 91-CV-5428 (BN), 1993 WL 149055, at *2 (S.D.N.Y. May 5, 1993). Similarly, pedestrians have a duty to yield to vehicles when crossing the road outside of a crosswalk and are prohibited from suddenly entering the path of a vehicle "which is so close that it is impractical for the driver to yield." See NYVTL §§ 1151, 1152.

## II. Discussion

Plaintiff objects to Judge Scanlon's recommendation on the basis that a police accident report and a USPS accident report should have been admitted into evidence. (Pl.'s Obj. at 1-2.) Plaintiff claims that both reports are admissible. Further, Plaintiff claims that both reports, in conjunction with Plaintiff's husband's testimony, create a genuine issue of material fact as to Giovelli's negligence. (Id.) The court finds that Plaintiff has put forward specific objections to the R&R, and therefore performs a de novo review of these objections.

The court assumes familiarity with the facts of the case, and adopts the summary of the relevant factual allegations included in the R&R. (See R&R at 1-5.) In brief, Plaintiff brought this action against the United States of America, alleging that Giovelli (the initial Defendant) did not exercise due care while driving his USPS truck, and that his negligence caused her to be struck by the truck. (Id.) Plaintiff claims that she was in the crosswalk when she was hit by the USPS truck, and she argues that Giovelli was the negligent party. (Id. at 10-11.) According to the NYVTL, if Plaintiff were able to prove that she was in the crosswalk when she was struck,

then she would not need to introduce evidence of duty or breach of that duty on the part of Giovelli because the violation of NYVTL alone would constitute negligence. See Mauro, 2013 WL 3816731, at *4; Lee, 986 F. Supp. at 279. Accordingly, the only dispute between the parties at this stage is whether Plaintiff can show a genuine issue of material fact as to whether she was in the crosswalk at the time of the accident. Plaintiff argues that she was hit in the crosswalk on the basis of three pieces of evidence: (1) the police accident report, (2) the USPS accident report, and (3) the testimony of her husband, Walter Petschauer.

### A.     Admissibility of the Evidence

#### 1.     Police Accident Report

The police accident report was apparently created by the first officer to arrive where the accident occurred, after Plaintiff had been struck by Giovelli's truck. (Pl.'s Obj. at 2.) Aside from broadly reporting the details of the accident, such as identifying the parties and the approximate location of the accident, the officer sketched a rough diagram of how the accident occurred. (See Police Accident Report (Decl. of Howard Schatz in Opp'n. to Def.'s Mot. for Summ. J. (Dkt. 22) ("Schatz Decl."), Ex. F (Dkt. 22-6)).) Plaintiff claims that this diagram demonstrates that she was in the crosswalk when she was hit by Giovelli's truck. (R&R at 11.)

Judge Scanlon determined that the police report was inadmissible because it was unauthenticated and contained inadmissible hearsay. (See id. at 11 (citing inter alia Lee, 986 F. Supp. 2d at 279 n.2).) Plaintiff argues that: (1) the police accident report is self-authenticating; (2) the court may take judicial notice of the report's contents; (3) the report was prepared in the regular course of police business and therefore admissible as a business record; and (4) the report is a party admission. (Pl.'s Obj. at 2.) Defendant responds that: (1) Plaintiff has not proven that the report is self-authenticating; (2) the court cannot take judicial notice of the report because the

contents of the report are outside the bounds of Federal Rule of Evidence 201; (3) Plaintiff cannot prove that the report is a business record; and (4) the report does not attribute any statements contained therein to a federal worker. (See Def.'s Resp. at 2-3 & n.2.) The court agrees with Judge Scanlon's determination that the police accident report is inadmissible.

First, the police accident report is not a self-authenticating document, because it lacks an official seal or the signature of another authorized officer to verify that the first officer's signature is genuine. See Fed. R. Evid. 902(1) (a document is considered self-authenticating if it is a document that bears a seal purporting to be from a department, agency, or officer of the United States and includes a signature attesting to that fact); Fed. R. Evid. 902(2) (if there is no seal but another public officer within the same department signs the document to attest that the first officer's signature is genuine, then the document is self-authenticating). The police accident report has no seal and has only the signature of the one officer who signed the document when he presumably created the report. Thus, the document is not self-authenticating.

Second, the court cannot take judicial notice of the police accident report's contents because that information does not fall within the realm of facts that the court can judicially notice. See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). In fact, courts regularly refuse to take judicial notice of incident reports, arrest reports, and police reports. See e.g., Coggins v. County of Nassau, No. 07-CV-3624 (JFB) (AKT), 2008 WL 2522501, at *6 n.4 (E.D.N.Y. June 20, 2008); Crew v. County of Nassau, No. 06-CV-2610 (JFB) (WDW), 2007 WL 4591325, at *6 (E.D.N.Y. Dec. 27, 2007); Gordon v. City of New York, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *6 (E.D.N.Y. Mar. 29, 2012). The court cannot adequately rely on the assumption that the

contents of the report are outside the bounds of Federal Rule of Evidence 201; (3) Plaintiff cannot prove that the report is a business record; and (4) the report does not attribute any statements contained therein to a federal worker. (See Def.'s Resp. at 2-3 & n.2.) The court agrees with Judge Scanlon's determination that the police accident report is inadmissible.

First, the police accident report is not a self-authenticating document, because it lacks an official seal or the signature of another authorized officer to verify that the first officer's signature is genuine. See Fed. R. Evid. 902(1) (a document is considered self-authenticating if it is a document that bears a seal purporting to be from a department, agency, or officer of the United States and includes a signature attesting to that fact); Fed. R. Evid. 902(2) (if there is no seal but another public officer within the same department signs the document to attest that the first officer's signature is genuine, then the document is self-authenticating). The police accident report has no seal and has only the signature of the one officer who signed the document when he presumably created the report. Thus, the document is not self-authenticating.

Second, the court cannot take judicial notice of the police accident report's contents because that information does not fall within the realm of facts that the court can judicially notice. See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). In fact, courts regularly refuse to take judicial notice of incident reports, arrest reports, and police reports. See e.g., Coggins v. County of Nassau, No. 07-CV-3624 (JFB) (AKT), 2008 WL 2522501, at *6 n.4 (E.D.N.Y. June 20, 2008); Crew v. County of Nassau, No. 06-CV-2610 (JFB) (WDW), 2007 WL 4591325, at *6 (E.D.N.Y. Dec. 27, 2007); Gordon v. City of New York, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *6 (E.D.N.Y. Mar. 29, 2012). The court cannot adequately rely on the assumption that the

report contains information "whose accuracy cannot reasonably be questioned," and, therefore, the court cannot take judicial notice of the facts within the report. Fed. R. Evid. 201(b)(2).

Furthermore, the police accident report contains hearsay because the police officer created the report from the accounts of several witnesses and did not witness the accident himself. Hearsay is an out-of-court statement, which is offered in court for the truth of the matter asserted. See Fed. R. Evid. 801(c). Here, Plaintiff attempts to offer the contents of the police accident report to prove that Defendant hit her while she was in the crosswalk. (R&R at 11-12.) However, because the police officer who created the report lacks first-hand knowledge of the accident, the contents of his report—which relays other people's observations—is hearsay. See Lee, 986 F. Supp. 2d at 279 n.2.

Hearsay is only admissible if there is an applicable exception to the general hearsay bar in the Federal Rules of Evidence. See Fed. R. Evid. 802. Plaintiff argues that the business record exception to the hearsay rule applies here. (Pl.'s Obj. at 2.) A business record is a record of some act, event, condition, opinion, or diagnosis, which was: (1) made at or near the time at which the event occurred; (2) kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (3) part of a regular practice to make that record; and (4) ensured that each of those requirements has been met by the testimony of the custodian or another qualified witness. See Fed. R. Evid. 803(6).

Here, the police accident report is inadmissible for two independent reasons. First, Plaintiff has put forward no evidence from which the court could conclude that the report is indeed a business record within the meaning of the Federal Rules. For example, Plaintiff has produced no evidence concerning the practice of the police department that made the report. Absent such evidence, the report cannot be admitted. See S.E.C. v. Credit Bancorp, Ltd.,

8

No. 99-CV-1395 (RWS), 2000 WL 968010, at *9 (S.D.N.Y. July 3, 2000); see also U.S. v. Abrams, 357 F.2d 539, 546 (2d Cir. 1966) ("[T]he moving party had the burden of showing that the document qualified under 28 U.S.C. § 1732, the statutory business record exception.") Second, where an accident report itself contains third-party statements, those statements require a hearsay exception. See Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."). Here, because the officer was not present at the accident, the report is only relevant if the third-party statements are admissible. Plaintiff has provided no basis to conclude that they are. Thus, the report is inadmissible. See Bennett v. Spitzer, No. 05-CV-1399 (JFB), 2007 WL 389213, at *8 (E.D.N.Y. Jan. 31, 2007) (stating that police reports can be admitted under the business record exception but that "a party wishing to introduce a police report must provide an independent evidentiary basis for admitting hearsay statements by other individuals contained within a police report").

Finally, the police accident report is not a party admission. A statement made by the opposing party and offered against that same party is a party admission and is not considered hearsay. Fed. R. Evid. 801(d)(2). Here, however, the police accident report does not attribute any of the information contained within it to an employee of the federal government. (See Police Accident Report; Fed. R. Evid. 801(d)(2).) The single statement that is included in the police report does not attribute its source to Giovelli, any other postal service worker, or indeed any federal employee at all. Instead, it merely reports a description of the accident in the New York City police officer's own words. (See Police Accident Report; see also Feis v. U.S., 484 F. App'x 625, 627 (2d Cir. 2012) (summary order) (finding insufficient circumstantial evidence to

9

prove that the individual who made the relevant statement was actually an employee of the defendant and that the plaintiff therefore failed to lay the proper foundation to admit the statement under Fed. R. Evid. 801(d)(2)(D)); Nat'l Commc'n Ass'n, Inc. v. Am. Tel. & Tel. Co., No. 92-CV-1735 (LAP) 1998 WL 118174, at *10 n.7 (S.D.N.Y. Mar. 16, 1998) (determining that the court would not "accept hearsay for which the declarant is unidentified" because "it is virtually impossible to determine the trustworthiness of a statement" in such circumstances).) Accordingly, the court agrees with Judge Scanlon that the report is inadmissible.

### 2. Accident Diagram in USPS Accident Report

The USPS accident report was created within one day of the accident by Robert Gonzalez ("Gonzalez"), Giovelli's supervisor, with input from Giovelli and another witness who saw the accident. (See R&R at 4-5, 12; Decl. of Jason Giovelli in Supp. of Mot. for Summ. J. ("Giovelli Decl.") (Dkt. 20-4).) Plaintiff claims that the diagram depicting the trajectory of the truck as it made its turn proves that she was hit in the crosswalk. (R&R at 12.) She contends that the diagram is appended to Giovelli's signed statement and that it could only have been prepared with information that he furnished, and, therefore, it should be admitted into evidence. (Pl.'s Obj. at 2.)

Plaintiff appears to be under the impression that Judge Scanlon found the USPS report inadmissible; however, it is unclear to the court that Judge Scanlon made such a determination. Indeed, Defendant did not even argue that the report was inadmissible. (Def.'s Reply Mem. in Supp. of Summ. J. (Dkt. 23-1) at 4.) Rather, Judge Scanlon simply found that, "[i]n any event, the diagram was not drawn by Giovelli, but rather, by his supervisor, Robert Gonzalez, who did not witness the accident and has no personal knowledge of the circumstances thereof." (R&R at 12.) Thus, Judge Scanlon found that Gonzalez could not testify to facts that he did not know.

This is clearly in keeping with the Federal Rules of Evidence. See Fed. R. Evid. 602. Judge Scanlon did not find that the report as a whole was inadmissible. Indeed, Judge Scanlon cited to the report as admissible evidence. (R&R at 12.) Thus, the court has no reason to believe that the USPS accident report is inadmissible and will consider it.

### B.     The Evidence Fails to Create a Genuine Issue of Material Fact

The evidence in the record shows that Giovelli was not negligent. It is undisputed that Giovelli owed Plaintiff a duty of care and that Plaintiff was injured as a result of Giovelli's truck striking her. (R&R at 9.) The only issue in question is whether Giovelli breached his duty under the NYVTL. See Curley, 153 F.3d at 13; Lee, 986 F. Supp. 2d at 279. This issue depends exclusively on whether Plaintiff was in the crosswalk when she was struck. It is Giovelli's uncontroverted testimony that he had a green light in his favor while he was making the left turn from 71st Street onto Metropolitan Avenue. (R&R at 9.) As he was making the turn, he maintained a speed well below the speed limit and was vigilant, watching for any possible obstacles, such as pedestrians or vehicles. (Id.) Giovelli stated that after he made the turn, his path was clear until Plaintiff stumbled in front of him from behind a stopped mini-van, which was sitting in a lane facing the opposite direction. (Id.) Giovelli could not have anticipated Plaintiff's actions, as he stated she was not in the crosswalk, and her sudden appearance did not give him enough time to stop or swerve without striking her. (Id.) Based on the admissible evidence in the record, there is nothing to suggest Giovelli could have taken any reasonable action to avoid hitting Plaintiff with his vehicle. See Perez, 1993 WL 149055, at *2 (noting that NYVTL § 1146 "does not impose on drivers a duty to avoid an accident no matter what the circumstances might be").

11

Whether or not Plaintiff was in the crosswalk is crucial for her argument, because if she was hit while in the crosswalk, Defendant would be found negligent per se under the NYVTL, even if he could not have avoided the accident. (Pl.'s Obj. at 2; R&R at 10-11.) However, considering each piece of evidence on which Plaintiff relies (the police report, the USPS report, and Walter Petschauer's statement), the court still would grant summary judgment to Defendant because Plaintiff's evidence cannot create a genuine issue of material fact regarding her location when she was hit.

The police accident report contains a diagram of the accident, which presumably was created by the police officer who arrived on the scene immediately after the accident. (See Police Accident Report.) However, the diagram does not depict any streets, vehicles, or identifying objects, let alone a crosswalk. (R&R at 11.) Thus, it does not support Plaintiff's contention that she was in the crosswalk when she was hit. No other statement in the report aids Plaintiff. Accordingly, the police accident report cannot create a genuine issue of material fact.

The USPS accident report contains a diagram that was created by Giovelli's supervisor, Gonzalez, which contains far more detail than the diagram in the police accident report. (See USPS Accident Report (Schatz Decl., Ex. D (Dkt. 22-4)).) On this diagram, the street is more clearly depicted with curbs, a sidewalk, and various store fronts. (Id.) The street where the accident occurred is labeled, and the trajectory of the truck is mapped out, tracking how the truck made the left turn, up until the impact. (Id.) However, this diagram does not indicate the location of the crosswalk, nor does it show Plaintiff inside of the crosswalk. In addition, Gonzalez, who drew the diagram, explicitly stated that the diagram did not show that Plaintiff was hit in the crosswalk. (Decl. of Robert Gonzalez in Supp. of Mot. for Summ. J. (Dkt. 23-3) ¶¶ 11-12 (noting that the diagram "does not delineate the presence of, or the borders

12

of, the crosswalk .... [The] diagram was not intended to indicate the exact point of impact of Giovelli's truck and Ms. Petschauer relative to the nearest crosswalk.").) Furthermore, the portion of the USPS accident report drafted by Giovelli states that Plaintiff was "crossing diagonally/jay walking[/]not in crosswalk." (R&R at 12.) Therefore, the diagram in the USPS accident report cannot support Plaintiff's allegation that she was in the crosswalk at the point of impact, and it does not create a genuine issue of material fact.

Lastly, the testimony provided by Plaintiff's husband, Walter Petschauer, does nothing to support Plaintiff's claim that she was in the crosswalk when the USPS truck hit her. Mr. Petschauer was not present when the accident occurred. (R&R at 13-14.) Rather, he arrived at the scene once his wife had already been placed on a stretcher by EMS workers. (Id.) There, he observed Plaintiff on a stretcher in the crosswalk. (Id.)

Plaintiff argues that Mr. Petschauer's observation supports her case because Giovelli testified that following the impact, Plaintiff fell to the ground and did not move until she was lifted onto the stretcher. (Pl.'s Obj. at 2.) Plaintiff claims that because her husband saw her in the crosswalk, and Giovelli testified that Plaintiff did not move until she was placed on the stretcher, a jury could conclude that she was struck in the crosswalk. (Id.)

The court agrees with Judge Scanlon's determination that Mr. Petschauer's post-accident observations cannot create a genuine issue of material fact. Mr. Petschauer was not present during the accident, and he did not see the USPS truck hit Plaintiff. His observations of where Plaintiff was when he arrived at the scene do not create any genuine issues of material fact because he lacks personal knowledge of what happened to Plaintiff from the time when the truck hit her until she was placed onto the stretcher. While it is true that Giovelli testified that Plaintiff did not move from where she was struck until she was lifted onto the stretcher, Giovelli's

13

testimony says nothing about what happened to Plaintiff after she was lifted onto the stretcher. (See Giovelli Decl.) The EMTs who lifted Plaintiff onto the stretcher could have moved her away from the accident site and into the crosswalk in order to bring her closer to the ambulance. Absent some evidence about what occurred from the time when Plaintiff was lifted onto the stretcher until Mr. Petschauer arrived (which Plaintiff has not provided), Plaintiff's argument concerning Mr. Petschauer's testimony is pure speculation. Pure speculation cannot create a genuine issue of material fact. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

Even upon examination of the police accident report, the USPS accident report, and Mr. Petschauer's testimony, the court cannot find any evidence that Plaintiff was inside the crosswalk when she was struck by the USPS truck. Thus, even if all three pieces of evidence were admissible, Plaintiff still could not show a genuine issue of material fact concerning the location of the accident.

### III. Conclusion

The court has reviewed the remainder of the R&R for clear error and finds none. Accordingly, for the reasons set forth above, the court ADOPTS IN FULL the R&R and GRANTS Defendant's motion for summary judgment. The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 2⁴, 2016

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge